**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Thomas Leeds, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:04-CV-429 |
| | ) |
| vs. | ) |
| | ) |
| John E. Potter, | ) |
| Postmaster General, | ) |
| | ) |
| | ) |
| Defendant. | ) |

O R D E R

   This matter is before the Court on Postmaster General John E. Potter's motion for summary judgment and renewed motion to dismiss (Doc. No. 37). For the reasons that follow, Defendant's motion for summary judgment is well-taken and is **GRANTED**; Defendant's renewed motion to dismiss is **MOOT**.

I. Background

   Plaintiff Thomas Leeds brings claims of age, race, and disability discrimination against Postmaster General John E. Potter arising out of his employment at the Bulk Mail Center ("BMC") in Cincinnati.

   Accordingly to the complaint, Plaintiff began employment with the United States Postal Service in 1976 as a mail handler. Complaint ¶ 7. In 1983, he suffered a serious back injury which left him totally disabled from working as a mail handler. Id. As an accommodation for his impairment, the

Postal Service offered Plaintiff a position in the Rewrap Section.  Doc. No. 40, Ex. 1.  This job offer states in pertinent part:

> This restricted duty position is tailored to meet your personal physical limitation.  This job does not qualify as a position which requires assignment to a competitive seniority bidding.  All positions requiring assignment by seniority contain duties within different job descriptions which are contrary and contro-convalescent to your physical condition.  Therefore, although you have and gain in seniority, you cannot bid on other assignments unless your physical condition improves to permit your reassignment.

Id. at 2.  Plaintiff is a Caucasian male and at all other relevant times in this case was age sixty-three.

At some later time, and the record is not clear on this point, Plaintiff bid for and was awarded a position as a forklift operator.  Plaintiff testified that although forklift operator was a position which accommodated his impairment, he bid for and was awarded the position on the basis of his seniority.  Plaint. Dep. at 23, 25.  Stated another way, the Postal Service did not give Plaintiff the position of forklift operator as an accommodation for his physical condition.  Forklift operator is mail handler position.  Id. at 23.

On September 28, 2002, Plaintiff was involved in an accident in which he bumped a filing cabinet while operating his forklift.  There is some dispute about the force of the collision.  Plaintiff testified that the filing cabinet only moved about an inch, that he straightened it back up again, and

2

that the cabinet was not otherwise damaged.  Plaint. Dep. at 35, 37.  Emory Ogletree, Plaintiff's supervisor at the time, testified that there was damage to the filing cabinet.  It does not appear to be disputed that the contact caused the filing cabinet to slightly move an adjacent platform on which supervisors Kay Johnson and Karen Thornberry were working. Plaint. Dep. at 35; Ogletree Dep. at 53.  The standard operating procedure at the BMC is that a forklift operator's license gets "pulled" after an accident pending an investigation. Ogletree Dep. at 18-19; Martin Dep. at 21-22.  A supervisor then determines how long the suspension of the license will last. Martin Dep. at 21-22.

A younger, African-American employee, Obie North, witnessed the accident.  Upon seeing the incident, North said: "Did you see that?  I want to see that white motherfucker lose his license like I did."  Plaint. Dep. at 37.  Following the policy, Ogletree testified that he suspended Plaintiff's forklift operator's license for either thirty or forty-five days. Ogletree Dep. at 46.  Plaintiff, on the other hand, claims that Ogletree suspended his license for about ninety days.  Plaint. Dep. at 46.  Obie North received a six month suspension after his forklift accident.  Id. at 38.

Ogletree assigned Plaintiff to work putting in-house and over-the-road containers in the chain loop for the remainder

3

of the day. Plaint. Dep. at 52. Plaintiff had his regular day off the following day, September 29. Id. at 52-53. When Plaintiff returned to work on September 30, Rachel McGrady, a temporary supervisor who is African-American, was his supervisor. Id. at 53. McGrady "traveled" Plaintiff to another area to work on the sack sorter machine. Id. at 62. Plaintiff worked on the sack sorting machine for the next four days. Id.

The present record does not state what the exact job duties of a sack sorter are. Nevertheless, it is clear that running the sack sorter machine is more physically demanding than operating a forklift. Plaintiff testified that when Manager of Distribution Operations ("MDO") Hugh Martin stopped by his station, he told Martin that this job was "kicking my ass." Plaint. Dep. at 57. Plaintiff told Supervisor Ron Parsel the same thing. Id. Plaintiff testified that Martin and Parsel knew that he had a bad back but did nothing to accommodate him. Id. Instead, Plaintiff claims that they told him to "be careful." Id.

Plaintiff left work early on his fourth day of operating the sack sorter machine because of back pain. Plaint. Dep. at 62. Plaintiff returned to work on October 7 and was assigned to work sorting loose mail. Id. at 63. That same evening, a co-worker drove Plaintiff to an urgent care facility because Plaintiff was experiencing back pain. Plaintiff was at

4

the medical facility for about an hour and a half and then returned to finish his shift.  Id. at 70.  Plaintiff apparently had his regular day off the following day, October 8.  Id. Plaintiff did not, however return to the BMC for work between October 8, 2002 and December 16, 2002.

On October 11, 2002, a physician at Group Health Associates completed an office note returning Plaintiff to work the same day with a 15 pound limit on lifting and a pushing or pulling limitation of 30 pounds.  The restrictions were to remain in place for one month.  Plaint. Dep. Ex. 4.  On October 14, 2002, Tri-Health Occupational Medicine Centers completed a work activity restriction report returning Plaintiff to work immediately with the same lifting and push/pull limitations and added restrictions of minimal stooping, bending and crouching and sit/stand as needed.  Id. at 2.  Although the record is not entirely clear on this point, when Plaintiff returned to the BMC on December 16, apparently it was only for the purpose of submitting medical documentation that he was unable to continue working.  See Plaint. Dep. at 70.

One of the issues in this case is whether Plaintiff filed a timely complaint of discrimination with the Equal Employment Opportunity ("EEO") counselor of the Postal Service. Regulations for federal employees require that an aggrieved person must initiate contact with an EEO counselor within 45 days

of the date of the matter alleged to be discriminatory.  Horton
v. Potter, 369 F.3d 906, 910 (6th Cir. 2004); 29 C.F.R. §
1614.105(a)(1).  Failure to meet this deadline requires dismissal
of the complaint unless waiver, estoppel or equitable tolling
applies.  Steiner v. Henderson, 354 F.3d 432, 435 (6th Cir.
2003).

        Plaintiff filed a formal EEO complaint on January 17,
2003 which alleged that the last date of discrimination occurred
on October 4, 2002.  Plaint. Dep. at 5.  Thus, Plaintiff clearly
filed his EEO complaint outside of the 45 day requirement.
Plaintiff claims, however, that Emory Ogletree assured him that
there was no need for an EEO complaint and that "we will handle
it."  See Doc. No. 40, Plaint. Aff. ¶ 7.  Plaintiff claims that
Ogletree's assurances dissuaded him from immediately filing an
EEO complaint and that he did file a complaint as soon as he
realized that his supervisors were not going to take any action.
Id. ¶¶ 9-12.  It appears, however, at least according to
Plaintiff's affidavit, that Ogletree's assurances related only to
Obie North's racial comments, and not to the perceived age and
disability discrimination.  See id. passim.  It also appears that
Plaintiff was only forestalled by Ogletree's assurances for about
two weeks.  See id. ¶ 10 (stating that Kay Johnson's
investigation of the incident involving Obie North "went on for
over two weeks").

6

Plaintiff received a notice of final agency action on April 6, 2004. Complaint ¶ 6. On June 25, 2004, Plaintiff filed the instant lawsuit asserting claims of disability discrimination pursuant to the Rehabilitation Act, 29 U.S.C. § 701, et seq., age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., against the Postmaster General, the United States Postal Service, Hugh Martin, Racquel McGrady, and Kay Johnson. The complaint also contained a claim for alleged constitutional violations against the individual Defendants pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Additionally, the complaint asserted a disparate impact claim which alleged that the Postal Service had a practice or policy of treating Caucasian employees more harshly than African-American employees in disciplinary matters. Finally, the complaint alleged a state law loss of consortium claim on behalf of Plaintiff's wife.

On June 16, 2005, on motion of the Defendants, the Court entered an order (Doc. No. 18) which: 1) dismissed the claims against the Postal Service as being asserted against an improper defendant; 2) dismissed the Rehabilitation Act, ADEA, and Title VII claims against the individual Defendants on the grounds that those statutes do not impose liability on

7

individuals; 3) dismissed the <u>Bivens</u> claim on the grounds that a <u>Bivens</u> claim arising out the plaintiff's employment relationship with the federal government is not cognizable; 4) dismissed the state law loss of consortium claim for failure to exhaust the administrative remedies provided in the Federal Tort Claims Act; and 5) dismissed Plaintiff's claim for punitive damages on the grounds that such damages are not recoverable against a governmental agency.  The Court declined to dismiss the remainder of Plaintiff's claims for failure to comply with the 45 day deadline to file a discrimination complaint with an EEO counselor on the grounds that Plaintiff's allegations, taken as true, showed that his supervisors forestalled Plaintiff from filing an EEO complaint with their assurances that they would handle the incident without the necessity of involving the EEO.  The Court did, however, grant leave to renew the motion on those grounds after the close of discovery.  Finally, the Court notes that Plaintiff withdrew his disparate impact claim in response to Defendant's motion for summary judgment.  <u>See</u> Doc. No. 39, at 11 n.3.

     On July 31, 2006, the Postmaster General moved for summary judgment on the merits of Plaintiff's claims for disability, age, and race discrimination.  Doc. No. 37.  The Postmaster General also renewed the motion to dismiss Plaintiff's claims for failure to comply with the 45 day requirement.

8

Because, however, the factual record on this issue has now been developed, the Court treats the administrative question as an aspect of Defendant's motion for summary judgment. Accordingly, to the extent that the renewed motion to dismiss is an independent motion for relief, the Court finds that it is **MOOT**.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of

9

fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477

U.S. 317, 327 (1986).  According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a

11

dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

III. <u>Analysis</u>

A. <u>Compliance with Administrative Requirements</u>

As indicated above, federal regulations require federal employees to initiate contact with the EEO counselor within 45 days of the date of the alleged discriminatory matter.  Plaintiff did not initiate contact with the EEO counselor within this period.  Plaintiff nevertheless argues that equitable tolling applies to excuse this failure because his supervisor's comments dissuaded him from initiating contact with the EEO counselor more promptly.

In determining whether equitable tolling should apply, the trial court should consider five factors: 1) whether the plaintiff had actual notice of the filing deadline; 2) whether the plaintiff had constructive notice of the deadline; 3) the degree of diligence the plaintiff exercised in asserting his rights; 4) the degree of prejudice to the defendant; and 5) the reasonableness of the plaintiff's ignorance of the time restraint.  <u>Steiner v. Henderson</u>, 354 F.3d 432, 435 (6th Cir. 2003).  These factors are not exclusive, however, and the court may decide to allow equitable tolling on a case-by-case basis. <u>Id.</u>  If none of the other factors favor the plaintiff, the

12

absence of prejudice to the defendant is not an independent basis to all allow tolling. Id. at 437. Finally, as the Court noted in ruling on the motion to dismiss, equitable tolling is permitted when the employer makes affirmative representations which mislead the plaintiff into missing a filing deadline. Id. at 437. Thus, in Leake v. University of Cincinnati, 605 F.2d 255 (6th Cir. 1979), the Court allowed equitable tolling where the employee delayed filing an EEOC complaint in reliance on the employer's request to have time to investigate her complaints and its promised not to use the time spent on the investigation to prejudice the plaintiff. Id. at 259.

As indicated, it is Plaintiff's position that Ogletree's statements dissuaded him from immediately filing an EEO complaint. The Postmaster General argues that at most, Ogletree's comments delayed Plaintiff from filing a claim of racial discrimination with the EEO and that he knew all of the facts concerning his claim for disability discrimination no later than October 7, 2002.

The parties have only provided the Court with excerpts of deposition transcripts, thus, the exact sequence of events concerning Plaintiff's resort or failure to resort to the administrative process is somewhat difficult to follow. Nevertheless, as indicated above, the statements of Ogletree concerning the absence of need to file an EEO complaint concern

13

Obie North's racial comments.  Plaintiff's affidavit indicates
that he waited for "over two weeks" and then received an apology
from Obie North.  Plaint. Aff. ¶¶ 10-11.  Plaintiff must have
received the apology from North sometime between September 28,
2002 and October 7, 2002, because he was absent from the BMC from
October 8, 2002 through December 16, 2002.  In his deposition,
Plaintiff testified that when he followed up with Kay Johnson
concerning her investigation of Obie North, she instructed North
to apologize to him.  Plaint. Dep. at 51.  Plaintiff testified
that he then told Johnson, "The circle has been complete, he done
what he was supposed to you [sic]."  Id.  Thus, this evidence
indicates that no more than about two weeks after the forklift
accident, Plaintiff was aware or at least believed that his
supervisors were not going to take any further action on his
complaint about Obie North.  More importantly, Plaintiff's
affidavit does not indicate that Ogletree's comments dissuaded
him from filing an EEO complaint about alleged disability
discrimination.

        In the latter regard, while the Obie North
investigation was ongoing, Plaintiff apparently filed a grievance
with the union concerning the suspension of his forklift license
and being traveled to perform work which allegedly violated his
work restrictions.  In his deposition, Plaintiff testified as
follows in regard to his disability discrimination complaint:

14

> Q. When did you ultimately decide to file an EEO concerning your handicap, failure to accommodate your handicap?
>
> A. Well, I believe it was sometime after the 16th of December because there were – I seen Ron Gilhardsten, and he was the vice-president of the union.
>
> He told me – I called him and I asked him about my grievance.  He looked at it, it was never acted on, nothing was being done.

Plaint. Dep. at 76 (emphasis added).  Thus, according to Plaintiff's deposition, it was the union's failure to act on his grievance, not Ogletree's statements, which caused him to delay filing an EEO complaint on his disability discrimination claim. This conclusion is borne out by the fact that the statement of facts attached to Plaintiff's formal EEO complaint only addresses his removal from the forklift operator position and being required to operate the sack sorter machine.  Plaint. Dep. Ex. 5. As the Postmaster General correctly argues, pursuit of the union's grievance procedures does not otherwise toll the period in which an employee must file an EEO complaint.  International Union of Elec., Radio, and Mach. Workers, 429 U.S. 229, 236-37 (1976).

In short, the record does not support Plaintiff's contention that Ogletree's statements caused him to delay filing an EEO complaint between October 4, 2002 and December 16, 2002. At most, Ogletree's statements cost Plaintiff about a two week delay in filing a complaint of racial discrimination.  This may

have also affected Plaintiff's age discrimination claim since North is younger than Plaintiff.  Ogletree's statements, however, could not have had any effect on the delay in filing a complaint of disability discrimination.  Rather, the delay was caused by the failure of the union to act on Plaintiff's grievance in a timely fashion.

Having resolved the issue of Ogletree's alleged misrepresentations, the question remains whether the factors described above nonetheless indicate that equitable tolling is appropriate in this case.  In his brief, Plaintiff claims that he did not have actual or constructive notice of the filing deadlines.  As the Postmaster General correctly observes, however, neither of these assertions is supported by an affidavit or deposition testimony.  Plaintiff clearly was not diligent in pursuing his claims of age and race discrimination.  As just stated, the timeline established on this record indicates that Plaintiff was aware no later than about two weeks after the forklift accident that his supervisors were going to take no further action vis-a-vis Obie North's statements.  Plaintiff filed his EEO complaint about four months after the accident, and, although he claimed age and race discrimination on the form, he provided no statement of facts concerning these allegations. Therefore, Plaintiff did not diligently pursue his age and race discrimination claims.

16

Plaintiff's diligence in pursuing his disability discrimination claim was better.  Plaintiff apparently did file a grievance with the union in a timely fashion.  However, as just stated, filing a union grievance does not otherwise toll the deadline mandated by federal regulations for a filing a complaint of discrimination.  Even though Plaintiff was not at the BMC from October 2002 to December 2002, he does not explain why he could not have followed up on the status of his grievance from home.  On the plus side, Plaintiff did file a EEO complaint relatively quickly once he learned the union was not going to act on his grievance and has prosecuted this lawsuit in a diligent fashion.  The evidence on whether Plaintiff's ignorance of the filing deadlines is reasonable or unreasonable is not particularly strong, although he does make the valid point that even his supervisor, Ogletree, was unaware of the filing requirements.  The Postmaster General does not claim prejudice as a result of Plaintiff not complying with the filing deadline.  The case in favor of allowing equitable tolling on Plaintiff's disability discrimination claim is admittedly not strong.  Nevertheless, in accordance with the general policy that claims should be resolved on their merits, because it is his best claim for relief, the Court will give Plaintiff the benefit of the doubt and permit equitable tolling on his disability discrimination claim.

17

For the reasons stated, the Court concludes that equitable tolling does not apply to Plaintiff's claims for age and race discrimination.  Accordingly, Defendant's motion for summary judgment on Plaintiff's age and race discrimination claims is well-taken and is **GRANTED**.  The Court will allow equitable tolling on Plaintiff's disability discrimination claim. Accordingly, Defendant's motion for summary judgment on Plaintiff's disability discrimination claim for failure to comply with the EEO filing deadline is not well-taken and is **DENIED.**

### B. Disability Discrimination

Plaintiff claims that the Postal Service violated the Rehabilitation Act by failing to accommodate his disability.  The Court understands this claim to have two components: 1) the removal of Plaintiff from his forklift operator position; and 2) Plaintiff's assignment to other positions which did not accommodate his disability.

In order to establish a prima facie case of disability discrimination based on a failure to accommodate, a plaintiff must show that: 1) he is an individual with a disability within the meaning of the Act; 2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; 3) his employer was aware of his disability; and 4) the employer failed to provide a reasonable and necessary

18

accommodation for his disability.  See Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997).

In Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 456-57 (6th Cir. 2004), the Court set forth at length the requirements regarding providing accommodations to employees with disabilities:

> To recover under the ADA, a plaintiff must do more than show that he is "disabled" within the meaning of the statute. He must also establish that he is a "qualified individual with a disability" by showing: (1) that he "satisfies the prerequisites for the position [he holds or desires], such as possessing the appropriate educational background, employment experience, [and] skills ..."; and (2) that he "can perform the essential functions of the position held or desired, with or without reasonable accommodation." Burns v. Coca-Cola Enter., Inc., 222 F.3d 247, 256 (6th Cir. 2000)(quoting Dalton v. Subaru-Isuzu Auto., Inc., 141 F.3d 667, 676 (7th Cir. 1998)).

> "A disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation 'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.'" Cassidy v. Detroit Edison Co., 138 F.3d 629, 633-34 (6th Cir. 1998)(quoting Monette, 90 F.3d at 1183).  An employer, then, has the burden of persuasion to show that an accommodation would impose an undue hardship. Id. at 634; Monette, 90 F.3d at 1184.

> Although a "reasonable accommodation" may include reassignment to a vacant position, 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii), an employer need not reassign a disabled employee to a position for which he is not qualified, nor is the employer required to waive legitimate, non-discriminatory employment policies or displace other employees' rights in order to accommodate a disabled employee. Burns, 222 F.3d at 257.  On the contrary, [a]ccording to the regulations, an employer need only reassign a disabled employee to a vacant position.  Employers are not required to create new jobs, displace existing employees from their

positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual. Id. (internal citations omitted).

Furthermore, in order to satisfy its duty under the ADA, an employer is only required to transfer an employee to a position comparable to the employee's prior position. Hoskins v. Oakland County Sheriff's Dep't, 227 F.3d 719, 728 n.3 (6th Cir. 2000). "The regulations instruct that employers 'should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time,' and should only reassign an individual to a lower graded position if the individual cannot be accommodated in an equivalent position. 29 C.F.R. pt. 1630, App. § 1630.2(o)." Id. The ADA does not require an employer to offer an employee a promotion as a reasonable accommodation, Cassidy, 138 F.3d at 634, and "an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." Hankins v. The Gap, Inc., 84 F.3d 797, 800-01 (6th Cir. 1996)(citing Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68-69, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986)). In fact, where a comparable position is not vacant, an employer's obligation to reassign an employee may include an assignment to a position with a lower grade of pay if the employee meets the job's qualifications. Cassidy, 138 F.3d at 634.

Finally, the regulations indicate that, although an employee is not required to accept an offered accommodation, if an individual rejects a reasonable accommodation, the individual will no longer be considered a qualified individual with a disability. Hoskins, 227 F.3d at 728 n.3; Hankins, 84 F.3d at 801. Specifically, 29 C.F.R. § 1630.9(d) provides: A qualified individual with a disability is not required to accept an accommodation, aid, service, opportunity or benefit which such qualified individual chooses not to accept. However, if such individual rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the

position, the individual will not be considered a
qualified individual with a disability.  <u>Id.</u>

<u>Id.</u> at 456-58.[1]

The Postmaster General argues that summary judgment
against Plaintiff on his disability discrimination claim is
appropriate because he was not a qualified person with a
disability and because there was no awareness among his
supervisors that he was disabled.

Initially, however, the Court notes that the Postal
Service did not violate the Rehabilitation Act by suspending
Plaintiff from the forklift operator position.  As indicated in
the statement of facts, although in 1984 Plaintiff received a
position in the rewrap section as an accommodation for his
disability, he obtained the position of forklift driver because
of his seniority and not as an accommodation.  Therefore, the
Postal Service did not fail to accommodate Plaintiff by
suspending him from performing the forklift operator position.

The Court agrees with the Postmaster General that the
record does not establish that Plaintiff's supervisors were aware
that he suffered from a disability which precluded him from
performing the other mail handler functions to which he was

---

[1]     ADA standards apply in Rehabilitation Act cases
alleging employment discrimination.  <u>Mahon v. Crowell</u>, 295 F.3d
585, 589 (6th Cir. 2002).

assigned.  Therefore, the Postal Service did not fail to accommodate Plaintiff's disability.

In his deposition, Plaintiff admitted that the supervisor who traveled him to the sack sorter machine, Raquel McGrady, was probably unaware that he had suffered a back injury. Plaint. Dep. at 86.  In fact, the only complaint that Plaintiff made to McGrady was that traveling him to the sack sorter machine violated his seniority rights.  <u>Id.</u>  There is no evidence that he complained to McGrady that performing this position would violate a needed accommodation.  There is evidence that Emory Ogletree knew of Plaintiff's back injury, but Plaintiff admitted that Ogletree was not responsible for traveling him to other positions.  <u>Id.</u> at 87.  Apparently supervisor Kay Johnson was aware of Plaintiff's back injury, but again there is no evidence that Johnson played a part in traveling him to other positions. <u>Id.</u>

In any event, even if these persons were aware that Plaintiff had a back injury, there is no evidence that his supervisors were aware that he was <u>disabled</u> as a result of that impairment.  In other words, there is no evidence that Plaintiff's supervisors were aware that his back injury caused a substantial limitation in a major life activity.  <u>See</u> <u>DiCarlo v. Potter</u>, 358 F.3d 408, 418 (6th Cir. 2004)(stating that in order to qualify as disabled person under the Rehabilitation Act, the

22

plaintiff's impairment must substantially limit a major life activity); Smith, 129 F.3d at 866 (in order to state claim for failure to accommodate, plaintiff must establish that employer was aware of disability); Brown v. BKW Drywall Supply Co., 305 F. Supp.2d 814, 829 (S.D.Ohio 2004)(Marbley, J.)("Knowing that an employee has health problems, however, is not the same as knowing that the employee suffers from a disability."). Plaintiff was not on a list of BMC employees who were restricted to light or limited duty. Martin Dep. at 60-61. Plaintiff did not obtain a letter from his doctor restricting his duties until after McGrady traveled him to the sack sorter machine for several days. Plaint. Dep. Ex. 4.

Plaintiff's best evidence on this point is Ogletree's deposition in which Ogletree apparently admitted being aware that Plaintiff had been issued a handicapped parking placard. Doc. No. 39, at 8.[2] There is some support for the proposition that a handicapped parking permit provides notice of the employee's disability to the employer, Butterfield v. New York State, No. 96Civ.5144 (BDP)LMS, 1998 WL 401533, at *10 n.9 (S.D.N.Y. July 15, 1998), but again, however, Ogletree was not responsible for traveling Plaintiff to positions which allegedly did not accommodate his disability. As indicated, McGrady was the

---

[2]     Plaintiff cited this portion of Ogletree's deposition but has not filed the deposition or provided any excerpts of the deposition for the Court's consideration.

frontline decision-maker, but Plaintiff does not claim that she was aware of his handicapped parking permit. Therefore, Ogletree's deposition does not establish an awareness among the decision-makers that Plaintiff was disabled. See Landefeld v. Marion Gen. Hosp., 994 F.2d 1178, 1181 (6th Cir. 1993)(no liability under the Rehabilitation Act were decision-maker was not aware that plaintiff was disabled).

Finally, the Postal Service was not required to engage in the interactive process because Plaintiff did not make a reasonable request for an accommodation. A disabled person bears the initial burden of requesting a reasonable accommodation. Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1183 (6th Cir. 1996). A request for an accommodation then creates a duty on the part of the employer to engage in an interactive process to find an accommodation for the employee. Breitfelder v. Leis, 151 Fed. Appx. 379, 385 (6th Cir. 2005). However, the employer is not required to provide an accommodation until the employee requests one. Crocker v. Runyon, 207 F.3d 314, 319 (6th Cir. 2000). Although the employee is not required to use magic words in order to request an accommodation, he must use language sufficient to convey to the employer his need for a reasonable accommodation. Ferrero v. Henderson, 341 F. Supp.2d 873, 901 (S.D.Ohio 2004), opinion withdrawn in part on other grounds, Ferrero v. Henderson, No. 3:00CV462, 2005 WL 1802134 (S.D.Ohio

24

July 28, 2005).  "The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation."  Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1046-47 (6th Cir. 1998).

Plaintiff's evidence, however, does not meet even this particularly low hurdle of proving that he made a request for an accommodation.  His only evidence on this point is that he told two supervisors that the sack sorter position was "kicking his ass."  While that statement indicates that Plaintiff was having difficulty performing that position, it insufficiently conveys the idea that Plaintiff was requesting a transfer to another position.  Indeed, the Court finds no evidence in the record that Plaintiff was incapable of requesting an accommodation more articulately.  Thus, this case is distinguishable from Beck v. University of Wis. Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996), in which the Court held that "the employer has the duty to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help."  The Court in Brown v. Chase Brass & Copper Co., Inc., 14 Fed. Appx. 482 (6th Cir. 2001), also distinguished Beck on the grounds that in its case the plaintiff's disability "quite clearly [did] not impede his ability to request an accommodation[.]"  Id. at 487 n.2. Plaintiff's statement that the job was "kicking his ass" could

only leave the employer to speculate as to his need for an accommodation. Accordingly, the Court finds that the record does not establish that Plaintiff requested a reasonable accommodation after his forklift operator license was suspended. Therefore, the Postal Service was not required to engage in the interactive process to find a reasonable accommodation for Plaintiff nor did it fail to provide a reasonable accommodation.

In summary, the record does not demonstrate that the Postal Service failed to accommodate Plaintiff's disability. Accordingly, Defendant's motion for summary judgment on Plaintiff's disability discrimination claim is well-taken and is **GRANTED**.

<u>Conclusion</u>

In conclusion, Plaintiff failed to timely file an EEO complaint with respect to his race and age discrimination claims. Accordingly, Defendant's motion for summary judgment on Plaintiff's age and race discrimination claims is well-taken and is **GRANTED.**  Those claims are **DISMISSED WITH PREJUDICE.**  Finally, the record fails to show that the Postal Service failed to accommodate Plaintiff's disability or otherwise discriminated against him because of his disability.  Accordingly, Defendant's motion for summary judgment on Plaintiff's Rehabilitation Act claim is well-taken and is **GRANTED.**  This claim is **DISMISSED WITH PREJUDICE.  THIS CASE IS CLOSED.**

**IT IS SO ORDERED**

Date  October 4, 2006             s/Sandra S. Beckwith
                                  Sandra S. Beckwith, Chief Judge
                                   United States District Court

27